ALI OROMCHIAN (SBN 224265)
YOUNG W. CHOI (SBN 230645)
JIMMIE WILLIAMS (SBN 144691)
Dental & Medical Counsel, PC
1904 Olympic Blvd., Suite 240
Walnut Creek, California 94596
Tel.: (925) 999-8200
Fax: (925) 884-1725
yc@dmcounsel.com
ao@dmcounsel.com
jw@dmcounsel.com
Attorneys for Plaintiff
OD'S ON FINANCE, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT CALIFORNIA

| | |
|---|---|
| OD'S ON FINANCE, LLC, a California limited liability company,<br><br>    Plaintiffs,<br><br>  v.<br><br>VITTORIO MENA, JR., and individual, and DOES 1 through 25, inclusive,<br><br>    Defendants. | Case No. 3:25-cv-03027<br><br>**FIRST AMENDED COMPLAINT FOR:**<br><br>  **(1) FALSE ADVERTISING (LANHAM ACT § 43(A)(1)(B));**<br>  **(2) FALSE ASSOCIATION (LANHAM ACT § 43 A(1)(A));**<br>  **(3) TRADEMARK INFRINGEMENT;**<br>  **(4) DEFAMATION;**<br>  **(5) TRADE LIBEL;**<br>  **(6) UNFAIR COMPETITION AND TRADE NAME INFRINGEMENT**<br>  **(7) TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff OD'S ON FINANCE, LLC complains and alleges against VITTORIO MENA, JR., an individual, and DOES 1 through 25, inclusive, as follows:

**PARTIES**

1.      Plaintiff OD'S ON FINANCE, LLC ("Plaintiff" or "ODOF") is a California limited liability company organized under the laws of the state of California with its principal place of business at 133 Second Street, Los Altos, CA 94022.

2.      Defendant Vittorio Mena, Jr., ("Defendant" or "MENA") is an individual and Plaintiff is informed and believes and thereon alleges that he is currently a resident of the state of New Jersey.

3.      The true names or capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1 through 25, inclusive, are unknown to Plaintiff who therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's loss, injury, harm, and damage as herein alleged were proximately caused by such defendants.

4.      Plaintiff is informed and believes and thereon alleges that at all times material to this complaint, defendants in addition to acting for himself, herself, or itself and on his, her, or its own behalf individually, is and was acting as the agent, servant, employee and representative of, and with the knowledge, consent and permission of, and in conspiracy with, each and all of the other defendants and within the course, scope and authority of that agency, service, employment, representation, and conspiracy. Plaintiff further alleges on information and belief that the acts of each of the defendants were fully ratified by each and all of the other defendants. Specifically, and without limitation, plaintiff alleges on information and belief that the actions, failures to act, breaches, conspiracy, and misrepresentations alleged herein and attributed to one or more of the specific defendants

were approved, ratified, and done with the cooperation and knowledge of each and all of the other defendants.

## JURISDICTION

5.      This court has subject matter jurisdiction over the federal Lanham Act, Act of July 5, 1946, 60 Stat. 427, pursuant to 15 U.S.C. § 1051 – 1127, and 28 U.S.C. §§ 1331, and 1338(a), the California Model State Trademark Law, and California Business & Professions Code, Sections 14200 – 14272 and 17200.

6.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1338(b) and 28 U.S.C. § 1367(a) as all claims arise out of a common nucleus of operative facts so as to form the same case or controversy.

7.      Defendants have purposely availed themselves of the privilege of conducting activities in this District and/or have committed and intentionally directed acts towards or with this District or residents thereof. Defendants knew that, inter alia, Plaintiff was headquartered and does business in California and in this District and that the effects of their intentional acts would occur or be felt in this District.

8.      The controversy in this action exceeds $75,000.00.

## DIVISIONAL ASSIGNMENT

9.      Defendants have purposely availed themselves of the privilege of conducting activities in this division, San Jose, and/or have committed and intentionally directed acts towards or with this division or residents thereof. Defendants knew that, inter alia, Plaintiff was headquartered and does business in California and in this division and that the effects of their intentional acts would occur or be felt in this division.

10.     All claims in this complaint arise out of a common nucleus of operative facts so as to form the same case or controversy.

## **GENERAL ALLEGATIONS**

11.     ODOF is in the business of promoting financial competence and career success for optometrists and those in related fields, including through the provision of newsletters and other resources to its community members. As part of its commercial activities, ODOF operates a Facebook Group called "OD's on Finance," a website "ODSONFINANCE.COM," and related social media pages, including on Instagram and LinkedIn.

12.     Since at least as early as on or around January 2018, ODOF has been continuously using the trademarks "OD's on Finance" or "ODS ON FINANCE" to market and sell its products, services, and other commercial activities throughout the United States, including in this District.

13.     Plaintiff has devoted substantial, time, effort, and resources to the development and promotion of the trademarks "OD's on Finance" and "ODS ON FINANCE" resulting in widespread association of these trademarks with the Plaintiff and substantial goodwill.

14.     On or around March 26, 2024, the United State Patent & Trademark Office ("PTO") issued to ODOF, U.S. Trademark Registration No. 7341337 for the mark "ODS ON FINANCE."

15.     MENA is a licensed optometrist. MENA holds himself out as possessing a 2-14, Series 6, and Series 63 financial licenses. He also claims to be a regular monthly contributor to Review of Optometric business columns and a lecturer on finance topics.

16.     MENA also operates the Facebook group "OD Finance Professionals," referred to herein as "ODFP." ODFP promotes and markets itself as the "second" largest financial community in the "Optometry space." ODFP advertises itself as a resource for support and advice for Optometrists and Optometry students in various areas of finance, including, financial planning, generating and building wealth, retirement, and estate planning.

17.     Plaintiff is informed and believes and thereon alleges that numerous members of the ODFP group reside in California and/or in this District.

18.     As of the filing of this complaint, Plaintiff is informed and believes and thereon alleges that ODFP has roughly 2,700 members.

19.     Plaintiff is informed and believes and thereon alleges that MENA and his business partners or associates offer products and services through the ODFP Facebook group page, including to persons who reside in this District and/or in California.

20.     In or around March of 2019, MENA became a member of the ODOF Facebook group. After becoming a member, MENA attempted to sell cryptocurrency which constituted violations of the "'No Self-Promotions/Spam or MLM' guidelines of the group." As a result of such violations, MENA was banned from the group.

21.     After being banned, MENA pleaded with ODOF to be let back into the group. ODOF allowed him to rejoin as a result. However, shortly after rejoining, MENA attempted to sell life insurance to group members. As a result of such further violations of community

guidelines, MENA was permanently banned from the group.

22.     On or around July 24, 2023, MENA began to publicly attack and defame ODOF, including its members such as Dr. Dat Bui, O.D. ("BUI") and Dr. Aaron Neufeld, O.D. ("NEUFELD").

23.     MENA's attacks were part of an overall campaign which involved his trading off the name and goodwill of ODOF, confusing consumers, and attempting to persuade them to utilize his products or services or that of his business partners over those offered by ODOF.

24.     Defendants, including MENA, knew that ODOF was headquartered in and did business in this District and knew that their actions would cause effects and harm to ODOF in this District.

25.     As a result of MENA's false, misleading, and malicious conduct, Plaintiff has suffered and continues to suffer loss, harm, and damage, including damages to reputation and goodwill.

**FIRST CAUSE OF ACTION**
**False Advertising**
**Lanham Act § 43(a)(1)(B), 15 U.S.C. 1125(a)(1)(B)**
**(By all Plaintiffs Against all Defendants)**

26.     Plaintiff realleges and incorporates by reference all allegations contained in all paragraphs of this complaint as though fully set forth herein.

27.     On or around January 02, 2024, MENA posted on the ODFP Facebook group page. A true and correct copy of portions of the subject post are attached hereto as Exhibit A. In the post, MENA copied a portion of the guidelines for the ODOF Facebook group. He then commented that ODOF had lost money for colleagues and that ODOF and its members were not "professionally licensed" but acted like they know the industry.

28.    These statements were, directly or impliedly, false or misleading.

29.    The statements falsely suggested that ODOF or its members were breaking the law by not "being professionally licensed." The statements also falsely stated that ODOF was directly responsible for losing money for its members.

30.    On or about February 04, 2024, MENA posted on the ODFP Facebook group page. A true and correct copy of pertinent parts of the subject post are attached hereto as Exhibit B. In the post, he displayed a cropped photo showing BUI and NEUFELD. Next to the photo, MENA stated that BUI and NEUFELD had flown down to tell the AOA that they realized that the finance team for the American Optometric Association ("AOA") needed optometrists with actual financial licenses. Further, that, as a result, BUI and NEUFELD had recommended MENA's group, ODFP, to the AOA.

31.    MENA also promoted his services and/or ODFP by providing a link to the ODFP Facebook group page stating: "See the link below to join the party."

32.    The post and MENA's comments were, directly or impliedly, false or misleading.

33.    The post falsely stated that ODOF members had recommended ODFP to the AOA and that, again, a financial license was required in order for ODOF to conduct its business.

34.    On or about February 07, 2024, MENA posted on the ODFP Facebook group page. A true and correct copy of pertinent portions of the post are attached hereto as Exhibit C. In the post, he claimed that ODOF was imitating him by speaking at an optometry school. He also promoted himself by suggesting that he was qualified to speak on financial matters

because he was licensed but that ODOF was not because it or its members did not have a license.

35.     These statements were, directly or impliedly, false or misleading.

36.     The statements falsely stated that ODOF or its members needed a license to engage in its commercial activities and that ODOF was copying MENA in speaking at optometry schools.

37.     On or around June 23, 2024, MENA posted about ODOF on the ODFP Facebook group page. The post involved a series of posts related to a presentation made by NEUFELD on or around June 23, 2024.

38.     In the last post comprising the series, MENA posted a photo of himself holding a copy of a book authored by ODOF members entitled "The Optometry Student's Guide to Financial Freedom." Next to the photo, MENA commented: "In order to make it to the top you need experience. So please help me understand how these authors have no licenses with no training are writing a book and holding it out and also selling it online to people… See previous photo for reference." A true and correct copy of this portion of the series of posts is attached hereto as Exhibit D.

39.     MENA's statements were, directly or impliedly, false or misleading.

40.     The statements falsely suggested that ODOF could not publish and sell the subject book unless it was written by a person with a financial license.

41.     On or around January 27, 2025, MENA posted on the ODFP Facebook group page.  A true and correct copy of pertinent portions of the subject post are attached hereto as Exhibit E. In the post, he purportedly reproduced an email that he claimed was provided to him anonymously. MENA claimed in his post that the subject line of the email as "ODs on

Finance: Experts or Opportunists?" The email was purportedly written by an optometrist who had invested in a real estate investment previously publicized on the ODOF Facebook group page and which was offered by New Sight Capital ("NSC").

42.    The email contained numerous statements that were, whether directly or impliedly, false or misleading.

43.    The email falsely stated that ODOF provided a false "narrative" that it or its members were "financial experts" or that they were "self-proclaimed experts," that ODOF claimed that it had vetted the NSC offering(s), that ODOF had guaranteed the NSC offerings, that ODOF had represented that the NSC offerings were "low risk," and that ODOF had used language that was deliberately misleading in relation to the NSC offerings.

44.    Plaintiff is further informed and believes and alleges thereon that the email itself was a fake and was not written by the purported author, rather that MENA and/or other defendants wrote the content of the subject email.

45.    The foregoing statements made by MENA in his posts were, whether directly or impliedly, false or misleading or had the tendency to deceive or mislead. In addition to the reasons already stated, the statements were deceptive or misleading in that they created the false or misleading impression that ODOF was not trustworthy and that persons should not purchase or utilize ODOF's goods, products, or services.

46.    In making such false or misleading statements or representations, MENA intended to confuse or deceive those who saw or read his statements or representations.

47.    MENA's actions were malicious, fraudulent, deliberate, and/or willful.

48.    The statements were material and went to the core of ODOF's commercial activities and were thus likely to influence a person's decision to do business with ODOF, including purchasing any products or services.

49.    Because of the manner and method of delivery over the internet, Plaintiff is informed and believes and thereon alleges that MENA's posts were disseminated to a substantial number of persons who were or could have been ODOF customers, including the nearly two thousand seven hundred or so members of the ODFP Facebook group.

50.    MENA's statements and representations entered interstate commerce as they were made over the internet and distributed all across the United States, including directly to persons who reside in California.

51.    As a direct and proximate result of MENA's false or misleading statements and representations, Plaintiffs have been or are likely to be injured, including economically, including as to sales, as well as reputationally, in amounts to be determined at trial.

52.    As a direct and proximate result of MENA's false or misleading statements and representations, defendants have profited in amounts to be determined at trial.

53.    Furthermore, defendants' actions were undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional cases entitling Plaintiff to additional damages, an accounting for profits made by defendants, and recovery of costs, including reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff prays judgment against defendants as more fully set forth below.

## SECOND CAUSE OF ACTION
### False Association
### Lanham Act § 43(a)(1)(A); 15 U.S.C. 1125 (a)(1)(A)
### (By all Plaintiffs Against all Defendants)

54.    Plaintiffs reallege and incorporate by reference all allegations contained in all paragraphs of this complaint as though fully set forth herein.

55.    On or about February 04, 2024, MENA posted on the ODFP Facebook group page.

56.    In the post, he displayed a cropped photo showing BUI and NEUFELD. Next to the photo, MENA stated that BUI and NEUFELD told the AOA that they realized that the finance team for the AOA needed optometrists with actual financial licenses. Further, that BUI and NEUFELD had recommended MENA's group, ODFP, to the AOA as a result.

57.    MENA then promoted his and/or ODFP's services by providing a link to join the ODFP Facebook group page.

58.    The post falsely stated that ODOF members had recommended ODFP to the AOA.

59.    The post was likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of ODOF with MENA or ODFP and/or was likely to cause confusion, mistake, or to deceive as to ODOF's sponsorship or approval of MENA or ODFP.

60.    The post also constituted a false or misleading description of fact or false or misleading representation of fact.

61.    On or about February 07, 2024, MENA posted on the ODFP Facebook group page.

62.    In the post, he copied and pasted a post from the ODs on Finance Facebook group page discussing a presentation by ODOF at an Optometry school. He then claimed that

"imitation" was the greatest form of flattery since ODOF was "following in" his "footsteps" by speaking at an Optometry school.

63.    MENA then promoted himself and ODFP while making misleading and false representations about ODOF.

64.    The post was likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of ODOF with MENA or ODFP and/or was likely to cause confusion, mistake, or to deceive as to ODOF's sponsorship or approval of MENA or ODFP.

65.    The post also constituted a false or misleading description of fact or false or misleading representation of fact.

66.    On or around April 30, 2024, MENA posted on the ODFP Facebook group page.  A true and correct copy of pertinent portions of the subject post are attached hereto as Exhibit F.  The post included a purported screenshot that appeared to show a request from BUI seeking to join the ODFP Facebook group page.

67.    MENA wrote in the post that he must be "doing something right" if his "rival" wanted to join his ODFP Facebook group. He simultaneously promoted the ODFP group in the post, including by asking to join the ODFP Facebook group.

68.    However, BUI had never requested to become member of the ODFP group. Accordingly, Plaintiff is informed and believes and thereon alleges that MENA manipulated, doctored, or otherwise falsified the purported screenshot to make it appear that BUI had attempted to join the ODFP group.

69.    The post was likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of ODOF with MENA or ODFP and/or was likely to

cause confusion, mistake, or to deceive as to ODOF's sponsorship or approval of MENA or ODFP.

70.     The post also constituted a false or misleading description of fact or false or misleading representation of fact.

71.     On or around June 04, 2024, MENA posted on the ODFP Facebook group page. A true and correct copy of pertinent portions of the subject post are attached hereto as Exhibit G. In the post, MENA promoted an upcoming lecture he would be giving as a representative of ODFP.

72.     However, MENA also included an unauthorized photo of NEUFELD next to his photo underneath a banner of an upcoming conference. He then advertised that he and NEUFELD, well-known as a co-founder of ODOF, would be presenting and inviting persons to attend.

73.     In the post, MENA referred to NEUFELD as his "best friend." He also stated that that NEUFELD would be speaking as a representative of "ODsonFinance."

74.     The unauthorized use of NEUFELD's photo, its juxtaposition next to MENA's, the use of the term "best friend" in reference to the co-founder of ODOF, the overall semblance of cross-promotion and other factors, rendered the post highly misleading and confusing.

75.     The post was likely to cause confusion, mistake, or to deceive as to the affiliation, connection or association of ODOF with MENA or ODFP and/or was likely to cause confusion, mistake, or to deceive as to ODOF's sponsorship or approval of MENA or ODFP.

76.     The post also constituted a false or misleading description of fact or false or

misleading representation of fact.

77.    ODOF did not support, endorse, sponsor, or approve of MENA or ODFP in any manner. ODOF and its members had repeatedly asked MENA to stop associating himself with ODOF.

78.    In taking the actions set forth herein, MENA intended to confuse or deceive those who saw or read his posts.

79.    Defendants knew or should have known that these statements, representations, and posts were false or likely to mislead.

80.    Because of the manner and method of delivery over the internet, Plaintiff is informed and believes and thereon alleges that MENA's posts were disseminated to a substantial number of persons who were or could have been ODOF customers, including the nearly two thousand five hundred or so members of the ODFP Facebook group.

81.    MENA's statements and representations entered interstate commerce as they were made over the internet and disseminated across the United States, including directly to persons who reside in California.

82.    As a direct and proximate result of MENA's false or misleading statements and representations, Plaintiffs have been or are likely to be injured, including economically, including as to sales, as well as reputationally, in amounts to be determined at trial.

83.    As a direct and proximate result of MENA's false or misleading statements and representations, defendants have profited in amounts to be determined at trial.

84.    Furthermore, defendants' actions were undertaken willfully and with the intention of causing confusion, mistake or deception, making this an exceptional cases

entitling Plaintiff to additional damages, an accounting for profits made by defendants, and recovery of costs, including reasonable attorney's fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Plaintiff prays judgment against defendants as more fully set forth below.


### THIRD CAUSE OF ACTION
**Trademark Infringement and Injunctive Relief**
**(Against All Defendants)**

85. Plaintiff realleges and incorporates by reference all allegations contained in all paragraphs of this complaint as though fully set forth herein.

86. The Plaintiff has been continuing to promote its expertise in the areas of financial competence, business support and career success for optometrists and those in related fields since January 2018.

87. The Plaintiff's trademarks have been and continue to be extensively displayed throughout the continental United States, under the trademark "ODS ON FINANCE". The Plaintiff's books, newsletters, blogs, continuing education programs and social media posts have received recognition throughout the continental United States by virtue of their works being published on Amazon, having a newsletter with over 25,895 subscribers, 18,014 Facebook members, 36,075 monthly website visitors, partnerships with over forty (40) major equipment companies, and hosting, speaking or sponsoring webinars that have received over 2,500 registrations on average in 2023 alone.

88. By virtue of marketing, together with consumer acceptance and recognition, the Plaintiff's marks identify the Plaintiff's promotion of financial expertise, business support and development of professional and career success and distinguishes it from services

provided by others.  The Plaintiff's trademarks have thus become and are valuable assets symbolizing the Plaintiff's expertise, knowledge, financial services, income saving techniques and goodwill.

89.    The Plaintiff's continuous use, application and subsequent registration of the trademarks operated to provide the defendants, and each of them, and anyone else, constructive notice of the Plaintiff's claim of ownership of the marks, their use of the marks and their right of priority of the marks.

90.    On or about July 7, 2023 and August 23, 2024, the Plaintiff, via a Facebook post, advised the defendant of the Plaintiff's ownership of the trademark "ODS ON FINANCE" and the trade name, now trademark, "ODS ON FINANCE" and requested that the defendant to cease and desist from further use of or to make any reference to the name. The defendant, and each of them, have failed and refused, and continue to fail and refuse, to comply with Plaintiff's request.

91.    The Plaintiff is informed and believes, and thereon alleges, that the defendant, and each of them, had actual notice of the Plaintiff's ownership of the trademark "ODS ON FINANCE" and the trade name, now trademark, through his March 2019 membership in the Plaintiff's Facebook group.

92.    The Plaintiff is informed and believes, and thereon alleges, that the defendant, and each of them, use the name "ODS ON FINANCE" in their social media and Facebook posts.  The defendant uses the trademark in the same manner as the Plaintiff uses its trademark, to promote his financial expertise to the optometrist's community.

93.    The Plaintiff is informed and believes, and thereon alleges, that the defendant use of the name ODFP is a direct imitation of Plaintiff's registered trademark.  The

defendant, and each of them, use the name ODFP in interstate commerce in connection with the promotion of financial advice to the optometrist community.  As such, the defendant, and each of them, use of the name ODFP is likely to cause, and has caused confusion, mistake or deception among consumers as to the source, quality and expertise of the defendant's services.  These actions by the defendant, and each of them, constitute trademark infringement pursuant to 15 USC 1114 and California Business and Professions Code, Section 14245.

94.    The Plaintiff is informed and believes, and on that basis alleges, that as a direct result and proximate result of advantage accruing to defendant's business from Plaintiff's nationwide advertising, marketing and consumer recognition, and as a proximate result of the confusion, deception or mistake of defendant's wrongful use, advertising and display of his expertise and ability to provide similar financial advice bearing a mark that is substantially indistinguishable from Plaintiff's as described above, the defendant has derived profits in an amount to be proven at trial.

95.    As a proximate result of the advantage accruing to defendant's, and each of them, business from Plaintiff's nationwide advertising, marketing and consumer recognition, and as a proximate result of the confusion, deception or mistake of defendant's wrongful use, advertising and display of his expertise and ability to provide similar financial advice bearing a mark that is substantially indistinguishable from Plaintiff's as described above, the Plaintiff has been, and will be deprived of substantial sales from its vendors and partnerships and has been deprived of the value of its trademark as a commercial asset, in amounts to be proven at trial.

96.    The Plaintiff is informed and believes, and thereon alleges, that unless restrained by the Court, the defendant, and each of them, will continue to infringe Plaintiff's registered trademark, thus endangering a multiplicity of judicial proceedings, and pecuniary compensation will not afford Plaintiff adequate relief for the damage to its trademarks in the public perception.

### FOURTH CAUSE OF ACTION
**Defamation**
**(Against all Defendants)**

97.    Plaintiff realleges and incorporates by reference all allegations contained in all paragraphs of this complaint as though fully set forth herein.

98.    On or around January 02, 2024, MENA posted on the ODFP Facebook group page falsely claiming that ODOF had lost money for colleagues, stating or implying that ODOF needed to be professionally licensed to engage in its commercial activities, and that ODOF and its members acted like they know how the industry works.

99.    MENA did not disclose the factual bases for his statement or implication that ODOF was violating the law by not having a finance related license.

100.    These statements and assertions were false.

101.    These statements and assertions exposed Plaintiff to hatred, contempt, ridicule, or obloquy, and/or caused it to be shunned or avoided, and/or had a tendency to injure it in its business and thus constituted libel per se.

102.    These statements and assertions were further libelous since they stated, represented, or implied that ODOF or its members were not qualified or competent to engage in their business activities, that they were breaking the law by not operating with a financial license, and that they were only pretending to know what they were doing.

103. On or about February 07, 2024, MENA posted on the ODFP Facebook group page falsely claiming that ODOF was imitating MENA by speaking at an optometry school. He again made the false statements or implication that ODOF and/or its members needed to have a financial license. He again failed to disclose the factual basis for this assertion. He also stated that ODOF or its members "pretends" to know about finances.

104. These statements and assertions were false.

105. These statements and assertions exposed Plaintiff to hatred, contempt, ridicule, or obloquy, and/or caused it to be shunned or avoided, and/or had a tendency to injure it in its reputation, either generally, or with respect to its business and thus constituted libel per se.

106. These statements and assertions were further libelous since they stated, represented, or implied that ODOF or its members were not qualified or competent to engage in their business activities, that they were breaking the law by not operating with a financial license, that they were only pretending to know what they were doing, and that they had nothing better to do than copy MENA or ODFP.

107. On or around April 30, 2024, MENA posted on the ODFP Facebook group page. The post included a false representation, or words and/or symbols or combination thereof to such effect, that BUI had attempted to join the ODFP Facebook group page.

108. Such statements, representations, and/or assertions were false.

109. ODOF did not support, endorse, sponsor, or approve of MENA or ODFP in any manner. ODOF and its members had repeatedly asked MENA to stop associating himself with ODOF.

110.    On or around June 23, 2024, MENA posted about ODOF on the ODFP Facebook group page falsely stating, or words and/or symbols or combinations thereof to such effect, that ODOF or its members required a financial license. However, yet again, MENA did not provide the factual bases for his blanket assertion.

111.    On or around January 27, 2025, MENA posted on the ODFP Facebook group page falsely stating that, inter alia, an email as sent to him anonymously, mispresenting the author and origin of the email,  that ODOF promoted a false "narrative" that it or its members were "financial experts," that ODOF and/or its members were "self-proclaimed experts," that ODOF claimed that it had vetted the NSC offering(s), that ODOF had guaranteed the NSC offerings, that ODOF had represented that the NSC offerings were "low risk," and that ODOF had used language that was deliberately misleading in relation to the NSC offerings.

112.    These statements and assertions were false.

113.    Plaintiff is further informed and believes and alleges thereon that the email itself was a fake and was not written by the purported author, rather that MENA and/or other defendants wrote the content of the subject email.

114.    MENA's false representations, statements, and assertions contained in his posts exposed Plaintiff to hatred, contempt, ridicule, or obloquy, and/or caused it to be shunned or avoided, and/or had a tendency to injure it in its reputation, either generally, or with respect to its business and thus constituted libel per se.

115.    These statements and assertions were further libelous since they stated, represented, or implied that ODOF or its members were not qualified or competent to engage in their business activities, and/or that they were breaking the law by not operating with a financial license, and/or that they were only pretending to know what they were doing, and/or

that they had nothing better to do than copy MENA or ODFP, and/or that ODOF willfully tricked or misled colleagues into losing money.

116.    MENA's false statements, assertions, and representations were made of and concerning Plaintiff and was so understood by those who saw, viewed, or read each statement, assertion, representation, or post.

117.    MENA's posts were seen, viewed, or read by a large number of people, including potentially all of the members of ODFP at or near the time of initial posting, which was approximately two thousand seven hundred persons, or more; and including, persons who reside in the state of California.

118.    As a proximate result of the above-described publications, Plaintiff has suffered loss of its reputation, standing in the community, and other general damage.

119.    As a further proximate result of the above-described publications, Plaintiff has suffered special damages in amount to be established at trial, including, but not limited to, loss of sponsorship opportunities and loss of other business opportunities.

120.    The aforementioned conduct of defendants was fraudulent, oppressive, and malicious, despicable, cruel, willful, and in conscious disregard of the rights of Plaintiff, and all such conduct was furthermore fully authorized, ratified, and with any requisite advance knowledge, thereby justifying the imposition of exemplary and punitive damages.

WHEREFORE, Plaintiff prays judgment against defendants as more fully set forth below.

### FIFTH CAUSE OF ACTION
**Trade Libel**
**(Against all Defendants)**

121.    Plaintiff realleges and incorporates by reference all allegations contained in all paragraphs of this complaint as though fully set forth herein.

122.    Plaintiff realleges and incorporates by reference all allegations contained in all paragraphs of the Fourth Cause of Action, above, as though fully set forth herein.

123.    MENA's false statements, representations, and assertions in his posts were derogatory, injurious, and/or disparaging to Plaintiff's title to its property, the quality of its products, goods, or services, and/or to Plaintiff's business in general.

124.    As a proximate result of the above-described publications, Plaintiff lost sponsorship and other business opportunities.

125.    As a direct and proximate result of the above-described publications, Plaintiff has suffered loss of its reputation, standing in the community, and other general damage.

126.    As a further proximate result of the above-described publications, Plaintiff has suffered special damages in amounts to be determined at trial, including, but not limited to lost sponsorship and other business opportunities.

127.    The aforementioned conduct of defendants was fraudulent, oppressive, and malicious, despicable, cruel, willful, and in conscious disregard of the rights of Plaintiff, and all such conduct was furthermore fully authorized, ratified, and with any requisite advance knowledge, thereby justifying the imposition of exemplary and punitive damages.

WHEREFORE, Plaintiff prays judgment against defendants as more fully set forth below.

## SIXTH CAUSE OF ACTION
### Unfair Competition and Trade Name Infringement
### (Against all Defendants)

128.    Plaintiff realleges and incorporates by reference all allegations contained in all paragraphs of this complaint as though fully set forth herein.

129.    The Plaintiff is, and at all times mentioned herein has been, engaged in the business of providing financial, business and career advice to the optometrist community under the trade name ODS ON FINANCE.

130.    The Plaintiff has continually done business under the trade name ODS ON FINANCE since January 2018.  The Plaintiff has built up valuable goodwill in its trade name, and it has come to be associated exclusively with the Plaintiff's business by the public generally throughout Northern California, as well as nationwide, as reflected by the extensive marketing and promotional activities for the Plaintiff's advice, services, partnerships and vendor relationships.

131.    The defendant, and each of them, are engaged in the business of providing financial advice and began doing business under the trade name OD Financial Professionals ("ODFP").  The defendant's trade name is substantially similar to that of the Plaintiff's, and the defendant's use of this trade name creates a likelihood that Plaintiff's customers, potential customers, and the public generally will be confused or misled to the source of goods and services in that they are likely to believe that the defendant's business is identical to or affiliated with that of the Plaintiff.

132.    The defendant threatens to, and unless restrained will, continue to use the trade name ODFP, as a result of which the public will generally be misled and deceived into believing that the defendant's business is identical to or affiliated with that of the Plaintiff's, all to the irreparable injury of the Plaintiff's business and goodwill and to the unjust enrichment of the defendant.  The Plaintiff has no adequate remedy at law in that it is extremely difficult to ascertain the amount of damages to the Plaintiff's business and goodwill.

133.    The defendant's continuing use of the confusing similar trade name ODFP constitutes an infringement and violation of the Plaintiff's rights in its trade name and corporate name.

134.    The court has jurisdiction over this action pursuant to California Business and Professions Code section 17200, et seq., which provides any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.

135.    In taking the actions, or omissions, alleged in this complaint, defendants' actions were taken in the course of business.

136.    In taking the actions, or omissions, alleged in this complaint, defendants' actions were unlawful, including making false representations about Plaintiff and/or its goods, products, services, or commercial activities.

137.    In taking the actions, or omissions, alleged in this complaint, defendants' actions were fraudulent.

138.    In taking the actions, or omissions, alleged in this complaint, Plaintiff is informed and believes and thereon alleges that defendants' actions violated common law unfair competition.

139.    As a direct, proximate, and foreseeable result of defendant's wrongful,

unlawful, or fraudulent conduct as alleged above, defendants' business acts or practices have caused injury to Plaintiff entitling it to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by defendants as a result of such business acts or practices.

140.    Defendants' illegal acts as described above are a serious and continuing threat to Plaintiff. If defendants are allowed to continue their wrongful or unlawful acts, Plaintiff will suffer further immediate and irreparable injury, loss, and damage thereby warranting a temporary restraining order and preliminary and permanent injunctions as prayed for below.

141.    The aforementioned conduct of defendants was fraudulent, oppressive, and malicious, despicable, cruel, willful, and in conscious disregard of the rights of Plaintiff, and all such conduct was furthermore fully authorized, ratified, and with any requisite advance knowledge, thereby justifying the imposition of exemplary and punitive damages.

WHEREFORE, Plaintiff prays judgment against defendants as more fully set forth below.

## SEVENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE
**(Against All Defendants)**

142.    Plaintiff realleges and incorporates by reference all allegations contained in all paragraphs of this complaint as though fully set forth herein.

143.    The Plaintiff alleges on information and belief that at all relevant times, the defendants, and each of them, were aware of the economically advantageous relationship that the Plaintiff had with third parties that the Plaintiff maintained sponsorship relations with.

144.    As alleged herein, the defendants, and each of them, engaged and continue to engage in a scheme to interfere with the Plaintiff's opportunity to receive sponsorship fees to inform the optometrist community about the sponsors goods and services.  But for the wrongful and intentional interference with the Plaintiff's prospective economically advantageous relationship with its sponsors, the Plaintiff and the sponsors would have renewed and/or completed agreements that allowed the Plaintiff to inform the optometrist community about the goods and services.  The defendants' fraudulent posts about the need for the Plaintiff to have financial licenses and recommendations of ODFP interfered with the prospective contract rights the Plaintiff could, and eventually did maintain.

145.    As a proximate result of defendants' intentional interference with the Plaintiff's prospective economic advantage, the Plaintiff has been damaged in an amount to be proven at trial.

146.    The Plaintiff alleges on information and belief that the actions of the defendants in interfering with the Plaintiff's prospective economic advantage were fraudulent, malicious and oppressive and constituted despicable conduct in conscious disregard of the Plaintiff's rights and were intended to cause the Plaintiff harm.  The Plaintiff is therefor entitled to an award of punitive damages.

## **PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

1.  For three times the amount of Plaintiff's actual damages caused by defendants infringement of Plaintiff's marks,

2.  For special damages according to proof,

3.  For consequential and/or incidental damages according to proof,

4. For punitive damages;

5. For an order requiring defendants to show cause, if they have any, why they should not be enjoined as set forth below, during the pendency of this action;

6. A preliminary injunction and a permanent injunction enjoining defendants, and their agents, servants and employees, and all persons acting under in concert with, or for them from:

    a. Using the name ODS ON FINANCE in connection with their providing of financial advice, goods and services, and from using the name ODS ON FINANCE on or in connection the providing of financial advice, goods and services to the optometrist community;

    b. Using the infringing name OD Financial Professionals that is confusingly similar to any of the Plaintiff's marks;

    c. Otherwise infringing Plaintiff's service marks;

    d. Causing likelihood of confusion, deception or mistake as to the source, affiliation, connection, origin, sponsorship, approval nature, or quality of defendant's products, services or social media posts;

    e. Making any further false statements, representations, or assertions regarding Plaintiff or its goods, products, services, and commercial activities

    f. For restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been improperly, unjustly, or unlawfully obtained by Defendants,

7.  For an order directing defendants, and each of them, to file with this Court and serve on Plaintiffs within thirty (30) days after service of an injunction, a report in writing under oath, setting forth in detail the manner and form in which defendants have complied with the injunction;

8.  For an order requiring defendants, and each of them, to deliver up and destroy all materials bearing the infringing designation;

9.  For post and pre-judgment interest;

10. For costs of suit and attorney's fees;

11. For such other and further relief as the court may deem proper.


Dated:  04/18/2025                    DENTAL & MEDICAL COUNSEL, PC


                                      By:  /s/ Jimmie L. Williams_____
                                           Jimmie L. Williams, Esq.
                                           Attorneys for OD'S ON FINANCE,
                                           LLC


## JURY DEMAND

Pursuant to F.R.Civ.P. Rule 38(b), and L.R. 3-6, Plaintiff demands a jury trial on all issues triable by a jury.


Dated:  04/18/2025                    DENTAL & MEDICAL COUNSEL, PC


                                      By:  /s/ Jimmie L. Williams_____
                                           Jimmie L. Williams, Esq.
                                           Attorneys for OD'S ON FINANCE,
                                           LLC